IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | 2 CA-CR 2011-0214 |
| Appellant, | ) | DEPARTMENT A |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| JAIME RENE ESPINOZA, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20111043001

Honorable Jane L. Eikleberry, Judge

AFFIRMED

Barbara LaWall, Pima County Attorney
  By Jacob R. Lines                                                                    Tucson
                                                               Attorneys for Appellant


Lori J. Lefferts, Pima County Public Defender
  By Joel Feinman and Lisa M. Hise                                                     Tucson
                                                               Attorneys for Appellee


E C K E R S T R O M, Presiding Judge.

¶1 In this appeal, the state challenges the trial court's order dismissing with prejudice the indictment against appellee Jaime Espinoza for failure to register as a sex offender. The court's dismissal was based on its conclusion that the superior court had lacked jurisdiction when, in 2004, it ordered Espinoza to register as a condition of his probation and that the order therefore was void. We agree and therefore affirm the trial court's ruling.

**Procedural History**

¶2 To address the arguments raised by the parties, we are required to "begin at the beginning" of Espinoza's criminal history, as it relates to sex offender registration. In February 1997, then twelve-year-old Espinoza was adjudicated delinquent for attempted molestation of a child and other charges and placed on juvenile intensive probation for twelve months. The juvenile court deferred a determination of whether Espinoza would be required to register as a sex offender and struck language requiring registration from the conditions of his probation, stating, "If the minor successfully completes probation, he will not be required to register as a sex offender." However, the court did not state that it would necessarily order him to so register if he failed on probation. That July, Espinoza appeared before a different juvenile court judge on a petition to revoke his probation. The court revoked his probation and committed him to the Arizona Department of Juvenile Corrections. The state does not dispute that the juvenile court never ordered Espinoza to register as a sex offender.

¶3 In 2003, when Espinoza was nineteen, he was indicted for burglary after he broke into a car and stole the vehicle's stereo speakers. Espinoza pleaded guilty to

criminal damage. In the presentence report, a probation officer informed the trial court of Espinoza's adjudication of delinquency and added, "A review of the Arizona Department of Public Safety records indicates the defendant never registered as a juvenile sex offender."

¶4 At the sentencing hearing in March 2004, the state urged the trial court to sentence Espinoza to a presumptive term of imprisonment. Noting that Espinoza had missed appointments with the probation department and had "failed to register," the state argued he was not likely to succeed on probation. Espinoza's counsel asked the court to give his client "one more chance" to "follow through," suggesting, "Perhaps if you give him one shot at probation [and] give him directions" he would be motivated to succeed.

¶5 After Espinoza echoed his attorney's comments, the trial court asked, "Are you sure? . . . . [Y]ou know, you were supposed to register? And you failed to do that, sir; do you understand that?" Espinoza responded, "Yes. And I have talked about it. They said that I have to do that, and I told him I got at—forgot where I had to do that. And I have followed through. I will do that if I get probation." The court suspended the imposition of sentence and placed Espinoza on three years' probation, specifying as a condition of probation that he "register as a sex offender immediately upon his release from custody" (hereinafter "the 2004 order"). In short, the court, counsel for the state, and counsel for Espinoza all erroneously relied on the probation officer's inaccurate assumption that the juvenile court previously had imposed on Espinoza a duty to register as a sex offender. Unaware of that error, Espinoza did not file a timely, of-right petition

3

for post-conviction relief pursuant to Rule 32, Ariz. R. Crim. P., to challenge the terms of his probation.

¶6            In August 2004, based on the erroneous trial court order, Espinoza was charged with failing to register as a sex offender and, after pleading guilty, was sentenced to a prison term of 2.5 years.  It appears he was charged once again with failing to register in July 2008, shortly after his release from prison for the 2004 offense.  Again, Espinoza pleaded guilty and was sentenced to 2.5 years' imprisonment.  His attorneys failed to challenge either of these convictions in timely, of-right petitions for post-conviction relief.  *See* Ariz. R. Crim. P. 32.4(a) (first notice of post-conviction relief in of-right proceeding "must be filed within ninety days after the entry of judgment and sentence").

¶7            In 2009, Espinoza initiated a Rule 32 proceeding seeking reversal of his 2004 conviction for failing to register.  In that proceeding, he argued he was entitled to relief because he was "actually innocent" of the charge pursuant to Rule 32.1(h), a ground not automatically subject to preclusion for untimely filing.  *See* Ariz. R. Crim. P. 32.2(b), 32.4(a).  Espinoza maintained there had been "no lawful order" requiring him to register in 2004, because the juvenile court had not ordered him to register as a result of his delinquency adjudication, and the superior court's order requiring him to register as a condition of the probation imposed for criminal damage therefore was "void and . . . unenforceable."

¶8            The trial court summarily denied relief, citing Espinoza's failure to comply with Rule 32.2(b), which requires summary dismissal of an untimely notice of post-

4

conviction relief that fails to include "meritorious reasons . . . why the claim was not stated . . . in a timely manner." As the court noted, notwithstanding Espinoza's "blanket statement" that Rule 32 permits an untimely claim of actual innocence, neither Espinoza's notice nor his petition for relief "set forth the reasons why the claim was not filed in a timely manner . . . [and] has taken over four years to file." In addition to its summary denial, the court concluded Espinoza's claims lacked merit, finding Espinoza could not "use the instant petition to challenge a condition of probation ordered in a separate cause number" and noting he had acknowledged in a change-of-plea hearing "that he had an affirmative duty to register and had not done so." On review of the trial court's ruling, we found no abuse of discretion and denied relief. *State v. Espinoza*, No. 2 CA-CR 2010-0114-PR (memorandum decision filed July 9, 2010).

¶9 Although the trial court's determination that Espinoza had failed to comply with Rule 32.2(b) provided a sufficient basis to deny relief, we also rejected Espinoza's argument that the 2004 criminal damage probation order was void ab initio. We did so, however, without identifying which of the several potential jurisdictional arguments we were resolving. *Espinoza*, No. 2 CA-CR 2010-0114-PR, ¶¶ 4-5. Our supreme court denied further review.

¶10 While review of that post-conviction proceeding was pending, Espinoza filed a notice of post-conviction relief challenging his sentence in the 2004 criminal damage case, specifically the order requiring him to register as a sex offender as a condition of his probation. The trial court found his claim precluded and, on review, we

5

also denied relief. *State v. Espinoza*, No. 2 CA-CR 2011-0066-PR (memorandum decision filed June 16, 2011).

**The Instant Case**

¶11     In March 2011, Espinoza again was indicted for violating the requirements of sexual offender registration. Specifically, the state charged him with failing to give notice of a change of name or address and failing to obtain a valid nonoperating identification license or driver license. *See* A.R.S. §§ 13-3821(J), 13-3822(A), 13-3824. Espinoza filed a "Motion to Dismiss Indictment with Prejudice as Insufficient as a Matter of Law," in which he argued he "was never legally ordered to register as a sex offender by any court" and therefore could not be found guilty of having failed to comply with registration requirements.

¶12     After a hearing, the trial court granted the motion, finding "the Juvenile Court never ordered the defendant to register as a sex offender and [the] Superior Court then did not have jurisdiction to order that the defendant register as a sex offender" in the 2004 criminal damage probation order, because such a requirement "was a matter only to be determined by the Juvenile Court." Having concluded the superior court had been without jurisdiction to order Espinoza to register as a condition of his probation, the court further found that order void and dismissed the indictment against Espinoza with prejudice. At Espinoza's urging, the court further found he "does not have to register as a sex offender in the future."

¶13     On this appeal from the trial court's dismissal order, the state argues the court abused its discretion in dismissing the indictment because Espinoza "is required to

6

register as a sex offender" based on the probation terms imposed in connection with the criminal damage conviction and the convictions for registration violations in 2004 and 2008. As the state points out, in addition to substantive offenses enumerated in A.R.S. § 13-3821(A) that trigger a duty to register as a sex offender, § 13-3821(A)(19) also imposes a duty to register if a defendant is convicted of violating the registration procedures set forth in A.R.S. §§ 13-3822 and 13-3824.

¶14 According to the state, the original superior court order requiring Espinoza to register as a condition of his probation, as well as the two convictions for registration violations that followed, all fell within the court's subject matter jurisdiction and therefore were not void ab initio, but voidable orders that could have been modified only "on appeal or by proper and timely post-judgment motion." *State v. Bryant*, 219 Ariz. 514, ¶ 15, 200 P.3d 1011, 1015 (App. 2008); *see also State v. Cramer*, 192 Ariz. 150, ¶ 16, 962 P.2d 224, 227 (App. 1998) ("A judgment that is voidable is binding and enforceable . . . until it is reversed or vacated."). In response, Espinoza maintains the superior court lacked jurisdiction when it ordered him to register as a condition of his probation for criminal damage and, therefore, that order and any further orders based upon it were void ab initio and subject to challenge even after they became final. *See State v. Chacon*, 221 Ariz. 523, ¶ 5, 212 P.3d 861, 863-64 (App. 2009) (order or judgment void if issuing court lacked subject matter jurisdiction; challenge to subject

7

matter jurisdiction "may be raised at any time" and "'can never be forfeited or waived'"), *quoting United States v. Cotton*, 535 U.S. 625, 630 (2002).[1]

## Discussion

**¶15** We review a trial court's ruling on a motion to dismiss criminal charges for an abuse of discretion, but we review de novo questions of statutory interpretation. *State v. Mangum*, 214 Ariz. 165, ¶ 6, 150 P.3d 252, 254 (App. 2007); *State v. Kuntz*, 209 Ariz. 276, ¶ 5, 100 P.3d 26, 28 (App. 2004) ("Whether the trial court properly applied § 13-3821(A) is a question of law that we review de novo."). We may affirm the court's ruling if it is legally correct for any reason. *State v. Aguilar*, 218 Ariz. 25, ¶ 22, 178 P.3d 497, 503 (App. 2008); *see also State v. Cañez*, 202 Ariz. 133, ¶ 51, 42 P.3d 564, 582 (2002) ("[W]e are obliged to uphold the trial court's ruling if legally correct for any reason."); *State v. Wills*, 177 Ariz. 592, 594, 870 P.2d 410, 412 (App. 1993) (reviewing court may affirm summary dismissal with prejudice when record "demonstrably require[s] it").

**¶16** Pursuant to A.R.S. § 13-3821, persons convicted of specifically enumerated offenses are required to register as sex offenders in Arizona. For the most part, the offenses specified involve kidnapping or unlawful restraint of a minor and certain sexual

---

[1]Relying on *Standard Oil Co. of Indiana v. Missouri ex rel. Hadley*, 224 U.S. 270, 281-82 (1912), Espinoza also maintains the 2004 order "'transcend[ed] the limits of [the court's] authority,'" *id.* at 282, *quoting Windsor v. McVeigh*, 93 U.S. 274, 282 (1876), and violated his right to procedural due process, because a registration requirement was not statutorily authorized upon his conviction for criminal damage. But, because we agree with Espinoza and the trial court that the original order was void ab initio, we need not address this claim.

8

offenses found in chapters 13, 14, 32, and 35.1 of title 13 of the Arizona Revised Statutes. § 13-3821(A)(1)–(18), (20)–(21).[2]

---

[2]Specifically, § 13-3821(A) requires registration of any person convicted of the following offenses:

> 1.  Unlawful imprisonment pursuant to § 13-1303 if the victim is under eighteen years of age and the unlawful imprisonment was not committed by the child's parent.
> 2.  Kidnapping pursuant to § 13-1304 if the victim is under eighteen years of age and the kidnapping was not committed by the child's parent.
> 3.  Sexual abuse pursuant to § 13-1404 if the victim is under eighteen years of age.
> 4.  Sexual conduct with a minor pursuant to § 13-1405.
> 5.  Sexual assault pursuant to § 13-1406.
> 6.  Sexual assault of a spouse if the offense was committed before August 12, 2005.
> 7.  Molestation of a child pursuant to § 13-1410.
> 8.  Continuous sexual abuse of a child pursuant to § 13-1417.
> 9.  Taking a child for the purpose of prostitution pursuant to § 13-3206.
> 10. Child prostitution pursuant to § 13-3212 subsection A or subsection B, paragraphs 1 or 2.
> 11. Commercial sexual exploitation of a minor pursuant to § 13-3552.
> 12. Sexual exploitation of a minor pursuant to § 13-3553.
> 13. Luring a minor for sexual exploitation pursuant to § 13-3554.
> 14. Sex trafficking of a minor pursuant to § 13-1307.
> 15. A second or subsequent violation of indecent exposure to a person under fifteen years of age pursuant to § 13-1402.
> 16. A second or subsequent violation of public sexual indecency to a minor under the age of fifteen years pursuant to § 13-1403, subsection B.
> 17. A third or subsequent violation of indecent exposure pursuant to § 13-1402.
> 18. A third or subsequent violation of public sexual indecency pursuant to § 13-1403.
> 19. A violation of § 13-3822 or 13-3824.

9

¶17 In addition to the registration mandated upon conviction for one of the offenses identified in § 13-3821(A), a sentencing court may, in its discretion, require life-long, sex offender registration of a defendant convicted of any sexual offense or child sexual exploitation offense found in chapter 14 or 35.1 of title 13, or of any offense which, pursuant to A.R.S. § 13-118, the state has alleged, and the trier of fact has found, was committed for the purpose of sexual gratification. § 13-3821(C). As the state concedes, Espinoza's 2004 conviction for criminal damage would not authorize a trial court, under any of these provisions, to order him to register as a sex offender. Criminal damage neither is listed among the offenses that trigger potential sex offender registration nor was any evidence presented suggesting that Espinoza had committed the offense for sexual gratification.

¶18 However, a superior court may require a juvenile who has been adjudicated delinquent for an act that would constitute an offense specified in either § 13-3821(A) or (C) to register as a sex offender. § 13-3821(D). But, as explained below, there is a concrete jurisdictional boundary, expressly set forth by our legislature, between a superior court addressing felony charges in its adult jurisdiction and when it addresses juvenile delinquency in its capacity as a juvenile court. We therefore agree with the trial court that the superior court judge who presided over Espinoza's adult criminal damage conviction and sentencing proceedings, lacked subject matter jurisdiction to issue the order requiring Espinoza to register as a sex offender.

---

20. Unlawful age misrepresentation [pursuant to § 13-3561].
21. Aggravated luring a minor for sexual exploitation pursuant to § 13-3560.

10

¶19 In analyzing the 2004 order, we are mindful that not all legal errors are jurisdictional errors and that Arizona courts have, on occasion, conflated the two. *See State v. Maldonado*, 223 Ariz. 309, ¶¶ 15-18, 223 P.3d 653, 655-56 (2010) (concluding reasoning of two prior supreme court cases, which found jurisdictional error arising from mere procedural defects in charging process, "no longer tenable"); *Marvin Johnson, P.C. v. Myers*, 184 Ariz. 98, 101-02, 907 P.2d 67, 70-71 (1995) (noting "imprecise use" of jurisdictional language in cases involving non-jurisdictional error). As our supreme court has recently observed, the conclusion that "a court cannot enter a valid judgment because of a procedural error does not mean that the court lacks subject matter jurisdiction." *Maldonado*, 223 Ariz. 309, ¶ 15, 223 P.3d at 655. Rather, "the phrase 'subject matter jurisdiction' refers to a court's statutory or constitutional power to hear and determine a particular type of case." *Id.* ¶ 14.

¶20 In determining whether a challenge to a court's power to act on a specific matter sounds as a jurisdictional question, we begin with the premise that our respective state courts have no threshold jurisdiction to hear and determine any type of case unless expressly authorized to do so by Arizona's constitution or by statute. *See* Restatement (Second) of Judgments § 11 cmt. a (1982) ("The authority of courts derives from constitutional provisions or from statutory provisions adopted in the exercise of a legislative authority, express or implied, to establish courts and to provide for their jurisdiction."); *Maldonado*, 223 Ariz. 309, ¶ 14, 223 P.3d at 655 ("'[S]ubject matter jurisdiction' refers to a court's statutory or constitutional power to hear and determine a particular type of case."). But, as our supreme court has explained, this does not mean all

11

judgments or orders in violation of either our state's constitution or statutory provisions implicate the jurisdiction of the court to issue them.

¶21        In *Maldonado*, the trial court had erroneously entered a judgment of guilt against a defendant who had never been properly charged.  223 Ariz. 309, ¶¶ 10-11, 15, 223 P.3d at 655.  That judgment was therefore obtained in violation of article II, § 30 of the Arizona Constitution, a provision that expressly bars felony prosecutions in the absence of an indictment or information.  *See Maldonado*, 223 Ariz. 309, ¶ 11, 223 P.3d at 655.  Yet, our supreme court held the court had not exceeded its subject matter jurisdiction in entering the judgment because article II, § 30 did not "by its terms address jurisdiction" and because article VI, § 14(4) of the Arizona Constitution specifically provides superior courts subject matter jurisdiction over felony criminal matters. *Maldonado*, 223 Ariz. 309, ¶¶ 19-21, 223 P.3d at 657.  Accordingly, in analyzing whether a court has exceeded its jurisdiction, we are instructed to distinguish between those constitutional or statutory provisions that expressly set forth or limit the jurisdiction of a court—from those that merely direct how that jurisdiction should be exercised.  *See State v. Payne*, 223 Ariz. 555, ¶ 10, 223 P.3d 1131, 1136 (App. 2009) (test of jurisdiction whether tribunal has power to enter upon inquiry, not whether conclusion of inquiry correct).

¶22        For this reason, we must reject Espinoza's specific contention that the trial court in 2004 acted in excess of its subject matter jurisdiction merely because that court erroneously imposed upon him a duty to register as a sex offender in contravention of statute, specifically § 13-3821.  Although that statute sets forth the circumstances under

which a person may be required to register as a sex offender, it does not purport to address the jurisdiction of a superior court "to hear and determine a particular type of case." *Maldonado*, 223 Ariz. 309, ¶ 14, 223 P.3d at 655.

**¶23** That conclusion, however, does not end our inquiry. Although § 13-3821 is silent on the question of whether the trial court had jurisdiction to enter the 2004 order, the legislature has not been similarly mute on the nature of a superior court's subject matter jurisdiction over matters of juvenile delinquency. Section 8-202, A.R.S., which is entitled "Jurisdiction of juvenile court," provides in pertinent part as follows:

> A. The juvenile court has original jurisdiction over all delinquency proceedings brought under the authority of this title.
>
> . . . .
>
> G. Except as otherwise provided by law, jurisdiction of a child that is obtained by the juvenile court in a proceeding under this chapter . . . shall be retained by it, for the purposes of implementing the orders made and filed in that proceeding, until the child becomes eighteen years of age, unless terminated by order of the court before the child's eighteenth birthday.
>
> H. Persons who are under eighteen years of age shall be prosecuted in the same manner as adults if either:
>
> > 1. The juvenile court transfers jurisdiction pursuant to § 8-327.
> >
> > 2. The juvenile is charged as an adult with an offense listed in § 13-501.

Although our prior case law has established there is no abstract jurisdictional distinction created by a superior court's decision to divide itself into different administrative

13

divisions, *see Marvin Johnson*, 184 Ariz. at 102, 907 P.2d at 71, our legislature has, in § 8-202, expressly set forth a specific, and jurisdictionally relevant, subcategory of the superior court called the juvenile court. That court has original jurisdiction over all delinquency matters. § 8-202(A). By the terms of that jurisdiction-defining statute, the adult divisions of the superior court only acquire jurisdiction over those acts committed by a juvenile that are charged as offenses listed in A.R.S. § 13-501 or those offenses wherein "jurisdiction" has been specifically transferred pursuant to the criteria set forth in A.R.S. § 8-327. § 8-202(H)(1) and (2). In short, the legislature has created a jurisdictional boundary, based primarily on the subject matter of the dispute (here, the type of offense), between a superior court acting in its capacity as a juvenile court and a superior court acting in its capacity as an adult court.[3]

¶24        Applying those principles to the case before us, we must conclude that, when the superior court issued the 2004 order, it lacked subject matter jurisdiction over Espinoza's juvenile adjudication for attempted child molestation in either its juvenile- or

---

[3]Given the terms of § 8-202, wherein the legislature specifically addresses the jurisdiction of the juvenile court and articulates concrete jurisdictional distinctions between it and superior courts sitting in their capacity to adjudicate adult criminal cases, we do not follow the conclusion of another division of this court suggesting there is no jurisdictionally relevant division between the two. *See State v. Marks*, 186 Ariz. 139, 142, 920 P.2d 19, 22 (App. 1996) (stating juvenile court department of unified superior court for purposes of jurisdiction). Notably, *Marks* addressed a similar problem under pivotally different state constitutional language than exists today. At the time, the Arizona Constitution expressly gave jurisdiction over juvenile matters to "the superior court." *See* former Ariz. Const. art. VI, § 15 (effective Dec. 9, 1960). Today's provision states instead that "[t]he jurisdiction and authority of the courts of this state in all proceedings and matters affecting juveniles shall be as provided by the legislature . . . ." Ariz. Const. art. VI, § 15 (effective Dec. 6, 1996). The legislature has so provided in § 8-202.

adult-court capacity. It lacked jurisdiction over the juvenile adjudication in its juvenile capacity because Espinoza had surpassed the age of eighteen. *See* § 8-202(G) (jurisdiction of juvenile court retained only until child "becomes eighteen years of age"); *see also In re Maricopa Cnty. Juv. Action No. JV-132744*, 188 Ariz. 180, 181, 933 P.2d 1248, 1249 (App. 1996) (same).[4] It likewise lacked jurisdiction in its adult-court capacity because the offense of attempted child molestation neither is itemized as an offense requiring adult prosecution under § 13-501, nor was jurisdiction for that offense transferred to the adult division pursuant to § 8-327. *See* § 8-202(H) (itemizing subject matter over which adult court secures jurisdiction of offense committed by juvenile).

¶25       Therefore, the superior court that presided over Espinoza's 2004 adult conviction for criminal damage lacked the jurisdiction to add additional consequences to Espinoza's delinquency adjudication. Those consequences were set forth by a juvenile court more than six years earlier and no longer could be modified after Espinoza's eighteenth birthday in March 2002.

¶26       The above reasoning leads us to two pertinent conclusions. To the extent the 2004 order can be characterized as arising from the trial court's authority to impose sanctions upon Espinoza for his adult conviction for criminal damage, that order—

---

[4]Section 13-3821(D) provides an apparent exception to this jurisdictional limitation stating, "Any duty to register [arising from an adjudication of delinquency] shall terminate when the person reaches twenty-five years of age." But this court has not read that provision to grant a superior court the jurisdiction to impose the threshold duty to register after the defendant's eighteenth birthday. *See Maricopa Cnty. No. JV-132744*, 188 Ariz. at 181-82, 933 P.2d at 1249-50 (rejecting argument that § 13-3821(D) constitutes exercise of juvenile court's jurisdiction after age eighteen and concluding statute contemplates initial order to register will necessarily occur before age eighteen).

15

however erroneous under § 13-3821—would not have been issued in excess of the court's jurisdiction. So characterized, it would be merely a procedural error in the context of the court's appropriate jurisdictional authority to resolve an adult felony matter. However, to the extent the trial court perceived its authority to enter the order as derived from Espinoza's juvenile adjudication for attempted child molestation, the superior court lacked jurisdiction to issue it.

¶27 The record before us suggests the trial court believed its authority to order Espinoza to register as a sex offender arose not from his conviction for criminal damage but rather from Espinoza's prior juvenile adjudication for a sex offense. The presentence report prepared for Espinoza's sentencing listed his prior adjudication for "sexually molesting his younger half-sister," as reported by Espinoza, and noted that he had failed to register as a sex offender with the Arizona Department of Public Safety. In context, these notations conveyed the probation officer's erroneous assumption that Espinoza had a duty to so register because of that adjudication. And, the trial court had no other information before it suggesting any other basis for ordering him to register as a sex offender.

¶28 Apparently relying on the information in the presentence report, the prosecutor argued Espinoza would not succeed on probation, in part, because he had failed to comply with a duty to register. Given that Espinoza had not yet been sentenced on the criminal damage offense, the prosecutor could not have been suggesting that Espinoza had failed to register for that offense. Espinoza's counsel requested "directions" from the court concerning what Espinoza was required to do on probation.

16

Having been advised by both the probation officer and the prosecutor that Espinoza had failed to comply with a pre-existing duty to register as a sex offender, the trial court adopted that assumption. It verbalized skepticism about Espinoza's assertion that he would be a good candidate for probation, specifically noting he was "supposed to register" and had failed to do so. In context, the record is clear that (1) the court believed Espinoza had a duty to register as a sex offender predating and unrelated to his criminal damage conviction, (2) the presentence report, which the court read, contained the only information before it indicating he had a pre-existing duty to register, and (3) the presentence report indicated that duty had arisen from the juvenile adjudication for a sexual offense.

¶29 At the same time, nothing in the record supports that the trial court believed the criminal damage conviction authorized it to impose on Espinoza any threshold duty to register. We assume trial courts know the law in the absence of evidence to the contrary. *State v. Williams*, 220 Ariz. 331, ¶ 9, 206 P.3d 780, 783 (App. 2008).[5] As discussed, the law is unambiguous that the offense of criminal damage is not a predicate offense for requiring sex offender registration. And, as noted above, the court and the parties could not have been referring to the criminal damage offense as the trigger for Espinoza's duty to register because each clearly believed that any such duty pre-existed the sentence pronouncement for the adult felony conviction.

---

[5]One need not be a specialist in criminal law to surmise that property offenses, unrelated to any sexual conduct, would not trigger any duty to register as a sex offender. We therefore are skeptical that an experienced jurist such as the superior court judge who issued the 2004 order would have believed the criminal damage offense authorized her to impose the duty to register.

¶30        Given our review of the record, we must conclude the state was correct when it conceded during oral argument that the trial court believed it was "building on something that had already occurred in juvenile court" and that the court thought "it was dealing with the juvenile matter when it issued the order." We therefore further conclude the court believed its authority to order Espinoza to register as a sex offender arose from his juvenile adjudication.

¶31        A judgment or order is void, and not merely voidable, if the court that entered it lacked jurisdiction "to render the particular judgment or order entered." *State v. Cramer*, 192 Ariz. 150, ¶ 16, 962 P.2d 224, 227 (App. 1998).[6] Because the trial court that presided over Espinoza's 2004 adult conviction lacked jurisdiction to order Espinoza to register as a sex offender based on the previous delinquency adjudication, its order requiring him to register was void.

¶32        A void judgment is a "nullity" and "'all proceedings founded on [a] void judgment are themselves regarded as invalid and ineffective for any purpose.'" *See id.*

---

[6]In *Marks*, 186 Ariz. at 142, 920 P.2d at 22, a division of this court found a superior court lacked personal jurisdiction rather than subject matter jurisdiction when litigating a criminal offense that had not been transferred properly from juvenile court. But, as noted above, that court's conclusion turned on its interpretation of jurisdictional language in the Arizona Constitution that is no longer present. Here, there can be little dispute that the trial court had personal jurisdiction over Espinoza because he was appropriately before it in adult court for an adult crime. Rather, the dispute in this case turns on whether the court had jurisdiction to address the subject matter of his juvenile adjudication. Moreover, § 8-202(H) clearly distinguishes those delinquency matters which must be litigated in juvenile court by the specific subject matter of the offense. Thus, there can be little dispute that § 8-202 sets forth the jurisdictional boundaries pertinent here based primarily on subject matter.

¶ 12, *quoting* 46 Am. Jur. 2d *Judgments* § 31 (1994);[7] *accord Valley Vista Dev. Corp. v. City of Broken Arrow*, 766 P.2d 344, 348 (Okla. 1988). Espinoza's convictions in 2004 and 2008 for failing to register as a sex offender were "'founded'" entirely on Espinoza's violation of the void 2004 criminal damage probation order; therefore, those convictions are likewise "'invalid and ineffective for any purpose.'" *Cramer*, 192 Ariz. 150, ¶ 16, 962 P.2d at 227, *quoting* 46 Am. Jur. 2d *Judgments* § 31.[8]

¶33     Accordingly, neither the trial court's original order compelling Espinoza to register as a sex offender nor Espinoza's two subsequent felony convictions for failing to abide by that order, support the indictment in the instant case. The trial court in the instant case did not err in finding the original order void or in concluding Espinoza not only has no duty to register as a sex offender in the future, but never has had such a duty.

¶34     When we encounter questions of subject matter jurisdiction raised for the first time long after a judgment has been entered, we enter an arena of the law where the

---

[7]The essence of this quote is currently found in 46 Am. Jur. 2d *Judgments* § 29 (2012).

[8]Although the state directs this court to our prior contrary conclusion issued in rejecting Espinoza's 2009 post-conviction challenge, the state does not specifically argue that principles of finality prevent us from reaching the same general issue in the context of this new criminal proceeding against Espinoza. No Arizona court has yet addressed whether a challenge to a court's subject matter jurisdiction would be barred under such circumstances. *See Pettit v. Pettit*, 218 Ariz. 529, n.3, 189 P.3d 1102, 1104 n.3 (App. 2008) (noting existence of federal and state authority suggesting finality of judgments could bar jurisdictional arguments that were, or could have been, raised in prior proceedings). *But see State v. Chacon*, 221 Ariz. 523, ¶ 5, 212 P.3d 861, 863-64 (App. 2009) (challenge to subject matter jurisdiction "may be raised at any time" and "'can never be forfeited or waived'"), *quoting United States v. Cotton*, 535 U.S. 625, 630 (2002). Because the question has not been squarely raised or litigated in this case, we decline to address it here.

competing values of validity and finality in judgments come into inevitable conflict. As both the Restatement of Judgments and our supreme court have acknowledged, the law of jurisdiction often has been directed and distorted by the comparative weight of those values in the individual case. *See Maldonado*, 223 Ariz. 309, ¶¶ 16-18, 223 P.3d at 655-56; Restatement § 11 cmt. e, § 12 cmt. a, b. In the context of challenges to criminal judgments that have become final, our state has adopted a modern approach, in conformity with the Restatement, which resists the temptation to characterize even serious procedural irregularities as violations of jurisdictional court authority. *See, e.g.*, *Maldonado*, 223 Ariz. 309, ¶ 18, 223 P.3d at 656. But true jurisdictional limitations on a court's authority remain and it is our conclusion that one of those boundaries has been breached here. It is mere happenstance that the breach occurred in an individual case where the equities of finality and validity weigh so heavily in favor of voiding the judgment.

### Disposition

¶**35** For the foregoing reasons, we affirm the trial court's order dismissing the indictment against Espinoza.

/s/ *Peter J. Eckerstrom*

PETER J. ECKERSTROM, Presiding Judge

CONCURRING:

/s/ *Joseph W. Howard*

JOSEPH W. HOWARD, Chief Judge

/s/ *J. William Brammer, Jr.*

J. WILLIAM BRAMMER, JR., Judge